O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROCENTURY INSURANCE CO., <br><br> PLAINTIFF, <br><br> vs. <br><br> SLOBODAN CUK, <br><br> DEFENDANT. | CASE NO. SACV 13-311-JLS (JPRx) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. 32)** |

Before the Court is a Motion for Summary Judgment filed by Plaintiff and Cross-Defendant ProCentury Insurance Co. (Doc. 32.) Defendant and Cross-Complainant Slobodan Cuk filed an Opposition, and Plaintiff replied. (Opp'n, Doc. 36; Reply, Doc. 39.) Having considered the briefing and supporting documentation submitted by the parties, heard oral argument, and taken the matter under submission, the Court GRANTS Plaintiff's Motion as to punitive damages, but otherwise DENIES the Motion.

## I. BACKGROUND

In 2004, Slobodan Cuk commenced an action seeking dissolution or annulment of his marriage to Dragana Cuk. (Def's SGI ¶ 1, Doc. 36-1.) In 2005, Mr. Cuk retained the law firm of Aaron Dishon. (Def's Comp. Ex. A ("Cuk Depo.") at 10:13-11:24, Doc. 36-5.) Dishon assigned Todd Coulston and Robert Burch to the work on Mr. Cuk's case. (*Id.*) Burch ultimately became lead attorney. (*Id.* at 14:11-24.) In August 2005, Burch and Coulston continued their representation of Mr. Cuk through the firm Burch & Coulston, LLP ("Burch Coulston").[1] (Def's SGI ¶ 2.)[2] Burch Coulston recommended that Mr. Cuk pursue the nullity claim. (*Id.* ¶ 3.)[3] A trial on the nullity claim was held in 2006. (Cuk Depo. at 16:18-19.) According to Mr. Cuk, at the time of trial, Burch was "assisting . . . with the documents," but another attorney not associated with Burch Coulston, Malcolm McNeil, was "conducting . . . the trial." (*Id.* at 17:15-23.) The court ruled against Mr. Cuk on the nullity claim. (Def's SGI ¶ 4.)[4]

---

[1] Burch & Coulston, LLP later became Burch, Coulston & Buncher, LLP.
[2] Although Defendant disputes certain facts in paragraph 2, he does not raise any dispute concerning the formation of Burch Coulston. (*See id.*)
[3] Defendant does not dispute that Burch Coulston provided this advice, but contends that other counsel retained by Mr. Cuk did so as well. (*See id.*)
[4] Although Defendant disputes certain facts in paragraph 4, he does not raise any dispute as to the ultimate denial of the nullity claim. (S*ee id.*)

On October 19, 2007, Ms. Cuk filed a motion for an award of attorney's fees, costs, and sanctions. (Pltf's Comp. Ex. 4 ("Fees Mot."), Doc. 32-6.) The motion argued that an award of fees, costs, and sanctions was warranted because Mr. Cuk "pursu[ed] a frivolous nullity action . . . for the express purpose of exhausting [Ms. Cuk], financially and emotionally." (*Id.* at 7.) The motion was accompanied by a declaration from Jack Conway, Ms. Cuk's attorney, stating that "the grounds upon which [Mr. Cuk and his attorneys] based their claim for a nullity had no basis in fact or in law." (Pltf's Comp. Ex. 5 ("Conway Decl.") at 2.) The declaration further states that "[t]he nullity trial was part of an overall scheme by [Mr. Cuk] and his attorneys aimed at humiliating and harassing [Ms. Cuk]." (*Id*. at 6.) In September 2008, Burch Coulston substituted out as Mr. Cuk's counsel in the dissolution proceedings. (Def's SGI ¶ 8.)[5]

On June 3, 2009, the state court issued an order requiring Mr. Cuk to pay $100,000 in sanctions and $325,000 in attorney's fees and costs. (Pltf's Comp. Ex. 8 ("Fees Order").) The court found as follows:

> [Mr. Cuk] initiated a nullity trial upon grounds which have no legal basis. The findings of the Court made at the nullity trial clearly show that [Mr. Cuk] had no legal basis for his claim that the marriage should be annulled. . . . The Trial Court repeatedly admonished [Mr. Cuk's] counsel during the nullity trial that they had failed to produce any evidence that would support a finding of nullity. . . . [Mr. Cuk] has used his financial superiority to finance his litigation beyond the bounds of reasonableness . . . . [Mr. Cuk's] tactics through the nullity trial . . . was [sic] to win by depriving [Ms. Cuk] of the ability to defend herself. This tactic is shameful and ultimately unsuccessful.

(*Id.* at 8-9.)

---

[5] Although Defendant disputes certain facts in paragraph 8, he does not raise any dispute as to the date of substitution. (S*ee* Def's SGI ¶ 8.)

3

In July 2009, Burch Coulsten applied for a professional liability insurance policy from ProCentury. (Pltf's Comp. Ex. 1 ("App.").) The application asked the following question:

> 2. Is the Applicant (after proper inquiry of each attorney and employees of the firm, including all Of Counsel and Independent Contractor attorneys), or any other proposed insured, aware of any fact, circumstance, situation, act, error or omission which may result in claim being made against the Applicant, its predecessors in business or any of the present or past partners, officers, directors or employees to which this insurance applies?

(*Id*. at 6.) In response, the "No" box was checked. (*Id.*) The application also provides that "[i]t is agreed that any claim or lawsuit against the Applicant or any other proposed Insured arising from any fact, circumstance, situation, act, error or omission disclosed or required to be disclosed in response to question 2 . . . above is hereby expressly excluded from coverage under the proposed insurance policy." (*Id.*) The application is dated July 30, 2009 and signed by Robert Burch. (*Id.* at 7.)

The professional liability policy was issued. (Pltf's Comp. Ex. 2 ("Policy").) The policy provides coverage for any sum "which the 'Insured' shall become legally obligated to pay as 'Damages' as a result of a 'Claim' first made against the 'Insured' and reported to the Insurer during the 'Policy Period' . . . for any 'Wrongful Act' by the 'Insured.'" (*Id.* at 14.) The terms of particular relevance in this coverage provision are defined as follows:

> "Claim" means a written demand received by the 'Insured' for money or seeking a remedy alleging a 'Wrongful Act,' including but not limited to the service of suit, the receipt of a subpoena requiring the 'Insured' to appear and give deposition testimony, the institution of arbitration, mediation or other formal alternative dispute resolution proceeding.
>
> . . .

>"Damages" means monetary judgments, awards or settlements, but does not
>include . . . restitution, reduction, return or set-off of fees, other
>compensation or expenses charged by, or paid to, the 'Insured';
>
>. . .
>
>"Wrongful Act" means any actual or alleged negligent act, error, breach of
>duty or omission; but solely if committed by an 'Insured' in performing
>'Legal Services' while duly licensed to provide such services.

(*Id.* at 15-17.) The policy further provides that "[a]ll 'Claims' alleging, based upon, arising out of or attributable to the same 'Wrongful Act' or 'Related Wrongful Acts' shall be treated as a single 'Claim.'" (*Id.* at 21.) "Related Wrongful Acts" are "'Wrongful Acts' that have as a common nexus any circumstance, situation, event, document, representation, lawsuit, transaction, casualty or decision or any series of circumstances, situations, events, documents, representations, lawsuits, transactions, casualties or decisions." (*Id.* at 17.)

On September 8, 2009, Mr. Cuk initiated an action in Orange County Superior Court against Burch Coulsten and others for legal malpractice, constructive fraud, and racketeering. (Pltf's Comp. Ex. 3 ("State Compl.").) The complaint alleges that Burch Coulsten and the other defendants, "[i]n advising and pursuing a 'nullity' claim through trial, . . . negligently failed to possess and/or exercise . . . that reasonable degree of knowledge and skill that is ordinarily possessed and exercised by other attorneys." (*Id.* ¶ 22.) The complaint further alleges that "[a]s a legal and proximate result of the negligence of the Defendants . . . [Mr. Cuk] has incurred incidental and other special damages, which include: approximately $450,000.00 already paid to the Defendants, $350,000.00 that the Defendants claim [Mr. Cuk] still owes them, $100,00.00 in sanctions for pursuing a 'nullity' claim through trial that was not warranted by the evidence and $325,000.00 owed to [Mr. Cuk's] ex-wife's counsel for pursing a 'nullity' claim." (*Id.* ¶ 23.)

5

In October 2012, Burch Coulsten and Mr. Cuk settled, agreeing to the entry of a stipulated judgment against Burch Coulsten in the amount of $550,000. (Pltf's Comp. Ex. 9 at 2.) Burch Coulsten also assigned its rights and claims against ProCentury to Mr. Cuk. (*Id.* at 4.) In a letter dated November 23, 2009, ProCentury denied coverage for the claims in Mr. Cuk's complaint on the grounds that they arose from the sanctions motion and related occurrences that Burch Coulsten had failed to disclose in response to question 2 on the application. (Pltf's Comp. Ex. 12 ("Denial") at 1-2.) On November 27, 2012, a stipulated judgment was entered against Burch Coulsten for $550,000.00 in damages. (Pltf's Comp. Ex. 10 at 2.)

On February 21, 2013, ProCentury filed the present action against Mr. Cuk seeking a declaration that ProCentury had no duty to defend against the malpractice action or pay the stipulated judgment. (Compl. at 12, Doc. 1.) Mr. Cuk's Amended Cross-Complaint asserts claims against ProCentury for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) violation of California Insurance Code § 11580, and (4) violation of California's Unfair Competition Law ("UCL"). (Amnd. Cross-Compl. at 11-24, Doc. 24.)

## II. EVIDENTIARY OBJECTIONS

Mr. Cuk makes numerous objections to the evidence offered by ProCentury. (*See* Def's Objcts., Doc. 36-3.) Mr. Cuk objects to certain of documents and declarations as irrelevant. (*Id.* at 2-6.) The Court's substantive analysis of the Motion, however, necessarily resolves these objections. *See Burch v. Regents of Univ. of California,* 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) ("A court can award summary judgment only when there is no genuine dispute of *material* fact. It cannot rely on irrelevant facts, and thus relevance objections are redundant."). Mr. Cuk also objects to many of the exhibits offered by ProCentury, including the insurance policy on which Mr. Cuk presumably bases

his own breach of contract claim, as lacking authentication and foundation. (Def's Objcts. at 2-4.) An Assistant Vice-President for ProCentury, Michael Burke, has authenticated and provided a foundation for the admission of the insurance policy and application in his declaration. (*See* Burke Decl. ¶¶ 1-2, 7, Doc. 32-4.) Mr. Cuk objects to the relevant portions of the Burke declaration on the grounds that Burke testified at his deposition that certain tasks in the underwriting process were handled by a Managing General Agent. (*See* Def's Objcts. at 4-5.) That a Managing General Agent was involved in the process, however, would not preclude ProCentury from having access to the policy and application. Indeed, even the deposition testimony relied upon by Mr. Cuk confirms that ProCentury ultimately received the policy. (*See* Def's Comp. Ex. E at 7:15-20.) Accordingly, Defendant's foundation and authenticity objections to the policy and application are overruled. Defendant's foundation and authenticity objections to the other exhibits are also overruled. ProCentury has authenticated these documents and provided a foundation for their admission. (*See* Gault Decl. ¶¶ 1-2, 4-8, Doc. 32-5.)

Mr. Cuk objects to many of the exhibits offered by ProCentury as hearsay. (*See* Def's Objcts. at 2-3.) However, to the extent the Court has relied upon statements in these exhibits, it has not done so for the truth of the matters asserted. *See* Fed. R. Evid. 801. Mr. Cuk also identifies certain defects in the state court sanctions motion and declaration in support of the motion. (*See* Def's Objcts. at 2.) While these defects might have provided the state court with grounds for declining to consider these documents when they were originally filed, they do not preclude this Court from considering them for the purpose of determining their contents. As to the remaining objections, the Court either does not rely on the evidence to which Mr. Cuk objects or it overrules the objection.

## III. LEGAL STANDARD

In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is proper "if the [moving party] shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.[6] A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is "material" when its resolution might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . , the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2). Furthermore, "Rule 56[(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Therefore, if the nonmovant does not make a sufficient showing to establish the elements of its claims, the Court must grant the motion. S*ee In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) ("non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor").

---

[6] Rule 56 was amended in 2010. Subdivision (a), as amended, "carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word — genuine 'issue' becomes genuine 'dispute.'" Fed. R. Civ. P. 56, Notes of Advisory Committee on 2010 amendments.

## IV. DISCUSSION

### A. Section 11580 Claim

California Insurance Code § 11580 provides that an insurance policy must contain "[a] provision that whenever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment." Cal. Ins. Code § 11580(b)(2). In his Amended Cross-Complaint, Mr. Cuk asserts that ProCentury violated § 11580 by refusing to pay him the sums due on his judgment against Burch Coulsten. (Amnd. Cross-Compl. ¶ 69.) ProCentury moves for summary judgment on the § 11580 claim on the grounds that the policy does not provide coverage for the judgment. (Pltf's Mem. at 10-15, Doc. 32-1.)

In interpreting an insurance contract under California law, courts must follow the ordinary rules of contractual interpretation. *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999). The "mutual intention of the parties at the time the contract is formed governs interpretation," and if possible, courts will infer this intent "solely from the written provisions of the [insurance policy]." *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 821-22 (1990). Thus, "if the policy language is clear and explicit, it governs." *Palmer*, 21 Cal. 4th at 1115 (internal quotation marks omitted). If interpretation of policy language is necessary, courts "must give [the policy's] terms their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage." *Id*. (quotation marks omitted.) "A policy provision is ambiguous *only* if it susceptible to two or more reasonable constructions despite the plain meaning of its terms within the context of the policy as a whole." *Id.* If ambiguity does exist, the court may then "invoke

the principle that ambiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage." *Id.* (quotation marks omitted).

ProCentury argues that the judgment is not covered by the policy because (1) a portion of the judgment is not for "Damages" as defined by the policy, (2) the remaining portion is not attributable to a claim "first made" during the policy period, and (3) Burch Coulsten was required, but failed, to disclose the circumstances surrounding the nullity trial and sanctions motion on the application. (*See* Pltf's Mem. at 11-15.)

### 1. "Damages"

In his malpractice action, Mr. Cuk sought as damages the $450,000 in fees and costs he paid to his counsel in the dissolution proceedings. (State Compl. ¶ 23.) He also sought to avoid liability for the $350,000 in fees and costs still owed. (*Id.*) ProCentury asserts that the fees and costs Mr. Cuk paid and owed are not covered "Damages," and that as a result, amounts attributable to such relief in the judgment are not covered by the policy. (*See* Pltf's Mem. at 11.)

The policy defines "Damages" as "monetary judgments, awards or settlements," but not "restitution, reduction, return or set-off of fees, other compensation or expenses charged by, or paid to, the 'Insured.'" (Policy at 16.) This provision is intended to exclude fee disputes from coverage. *See Tana v. Professionals Prototype I Ins. Co.*, 47 Cal. App. 4th 1612, 1617 (1996) (finding claims excluded from coverage where "[a] commonsense reading of the complaint reveal[ed] that it was entirely a fee dispute, *not a malpractice claim*." (emphasis added)). Mr. Cuk's complaint, however, did not plead a fee dispute. Rather, Mr. Cuk sought the fees and costs at issue as damages caused by Burch Coulsten's allegedly negligent act of advising Mr. Cuk to pursue a nullity claim. (*See* State Compl. ¶¶ 20, 23.)

| | |
|---|---|
| 1 | "[A]n attorney's liability [for malpractice], as in other negligence cases, is for all |
| 2 | damages directly and proximately caused by his negligence." *Ferguson v. Lieff, Cabraser,* |
| 3 | *Heimann & Bernstein*, *LLP*, 30 Cal. 4th 1037, 1045 (2003) (quotation marks omitted). *See* |
| 4 | *also* 3 Mallen & Smith, Legal Malpractice § 21:6 (2014 ed.) ("Usually, the fees paid to the |
| 5 | defendant-attorney bear no relation to the loss of the client."). As a result, to the extent |
| 6 | attorney's fees and costs paid or owed to a defendant attorney are recoverable in a |
| 7 | malpractice action, they are recoverable only because they are consequential damages. |
| 8 | Thus, when Mr. Cuk sought the fees and costs at issue, the character of that recovery was |
| 9 | not the return or restitution of fees. "[I]n a legal malpractice case, fees paid in the |
| 10 | underlying action can take on a different character; they are compensable damages flowing |
| 11 | directly from the malpractice defendant's negligence." *Citrus World, Inc. v. Ferraiuoli,* |
| 12 | *Torres, Marchand & Rovira, P.S.C*, No. CIV. 11-2118 SCC, 2014 WL 1007744, *16 |
| 13 | (D.P.R. Mar. 14, 2014). |

In *Citrus World*, the court found that a malpractice action seeking fees paid to the insured law firm by its client was not excluded from coverage by a policy provision defining "damages" as not including the "return of or reimbursement for legal fees, costs or expenses." *Id.* at *15-16. The malpractice claim "allege[d] damages, in terms of fees and costs, for having had to engage in needless litigation," and "an action to recover for the fees thus expended," the court reasoned, "is one for consequential damages arising from the underlying negligence." *Id.* at *16. The same is true here. Mr. Cuk sought the fees and costs at issue as consequential damages caused by Burch Coulsten's allegedly negligent advice and representation. (*See* State Compl. ¶¶ 20, 23.) The definition of "Damages" in the policy does not operate to exclude such relief from coverage. As the court stated in *Citrus World*, "it would make little sense to read out coverage of such claims from [a] professional liability policy" because "in many malpractice cases attorneys' fees may be the only damages sustained." 2014 WL 1007744, at *16 (quotation marks omitted). *See also Tana*, 47 Cal. App. 4th at 1619 ("In bargaining for a malpractice

insurance policy, [the insured] could legitimately expect that he would be covered for acts or omissions in the course of *representing his clients*."). The definition of "Damages" in the policy does not preclude coverage of the portion of the $550,000 judgment attributable to the paid and unpaid fees and costs sought by Mr. Cuk in the malpractice action.

### 2. Claim "First Made" During The Policy Period

In his malpractice action, Mr. Cuk demanded that Burch Coulsten pay the $325,000 in fees and costs and $100,000 in sanctions the court ordered him to pay in the dissolution proceedings. (State Compl. ¶ 23.) The policy provides coverage only for sums "which the 'Insured' shall become legally obligated to pay as 'Damages' as a result of a 'Claim' first made against the 'Insured' and reported to the Insurer during the 'Policy Period' . . . for any 'Wrongful Act' by the 'Insured.'" (Policy at 14.) The policy further provides that "[a]ll 'Claims' alleging, based upon, arising out of or attributable to the same 'Wrongful Act' or 'Related Wrongful Acts' shall be treated as a single 'Claim.'" (*Id.* at 21.) "Related Wrongful Acts" are "'Wrongful Acts' that have as a common nexus any circumstance, situation, event, document, representation, lawsuit, transaction, casualty or decision or any series of circumstances, situations, events, documents, representations, lawsuits, transactions, casualties or decisions." (*Id.* at 17.) The Policy Period began August 1, 2009. (*Id.* at 4, 17.) ProCentury argues that any amounts in the judgment attributable to the $425,000 in fees, costs, and sanctions are not covered because the sanctions motion was a "Claim" first presented to Burch Coulsten before August 1, 2009. (*See* Pltf's Mem. at 11-12.)

A "Claim" is defined in the policy as a "written demand received by the 'Insured' for money or seeking a remedy alleging a 'Wrongful Act,' including but not limited to the service of suit, the receipt of a subpoena requiring the 'Insured' to appear and give deposition testimony, the institution of arbitration, mediation or other formal alternative

dispute resolution proceeding." (Policy at 15.) A "Wrongful Act" is limited to an "actual or alleged negligent act, error, breach of duty or omission." (*Id.* at 17.) Courts interpreting substantially identical provisions have concluded that "negligent" modifies each term in the definition. *See Forest Meadows Owners Ass'n v. State Farm Gen. Ins. Co.*, No. 1:11-CV-01642-AWI, 2012 WL 1205204, *6 (E.D. Cal. Apr. 11, 2012) (finding that "'any negligent acts, errors, omissions or breach of duty'" clearly meant "negligent acts, negligent errors, negligent omissions or negligent breaches of duty" (quoting policy)); *Oak Park Calabasas Condo. Assn. v. State Farm Fire & Cas. Co.*, 137 Cal. App. 4th 557, 564 (2006) (finding that "'any negligent acts, errors, omissions or breach of duty'" was limited to "conduct sounding in negligence" (quoting policy)); *Grp. Voyagers, Inc. v. Employers Ins. of Wausau*, No. C 01-0400 SI, 2002 WL 356653, *4 (N.D. Cal. Mar. 4, 2002) *aff'd*, 66 F. App'x 740 (9th Cir. 2003) ("The Court finds, therefore, that 'negligent act, error or omission' means 'negligent act, negligent error, or negligent omission.'" (quoting policy)). The definition of "Wrongful Act" in the policy therefore encompasses negligent, but not intentional, misconduct. *See Forest Meadows Owners Ass'n*, 2012 WL 1205204, at *6.

Ms. Cuk's motion requested sanctions against Burch Coulsten only in the declaration accompanying the motion. (Conway Decl. at 8-9.) Those sanctions were sought under California Code of Civil Procedure § 128.5. (Conway Decl. at 8.)[7] Sanctions under § 128.5 may only be awarded where an attorney has engaged in "bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay." Cal. Civ. Proc. Code § 128.5(a). "[T]he bad faith filing of a frivolous lawsuit is always intentional, wrongful, and harmful; and is, hence, 'wilful' . . . ." *California Cas. Mgmt.*

---

[7] The other statute under which Ms. Cuk sought sanctions, California Family Code § 271, allows sanctions to be imposed "*only* against a party." *Orange Cnty. Dep't of Child Support Servs. v. Superior Court*, 129 Cal. App. 4th 798, 804 (2005) (emphasis added). *See also* Cal. Prac. Guide Family L. Ch. 14-A ("Under other statutes, either a party, his or her attorney or both are exposed to sanctions. However, Fam.C. § 271 contemplates that fee-shifting sanctions occur *exclusively as between the parties* to the action.").

13

*Co. v. Martocchio*, 11 Cal. App. 4th 1527, 1536 (1992) (holding that insurer could not be liable for § 128.5 sanctions against an insured because insurance for wilful acts is barred by California Insurance Code § 533). As a result, in seeking sanctions against Burch Coulsten, Ms. Cuk was required to allege a wilful act, not a negligent one, and in her motion she did precisely that. Ms. Cuk argued that sanctions were warranted because Mr. Cuk and his attorneys pursued the nullity action "for the express purpose of exhausting [Ms. Cuk], financially and emotionally." (Fees Mot. at 7.) The declaration accompanying the motion further stated that "[t]he nullity trial was part of an overall scheme by [Mr. Cuk] and his attorneys aimed at humiliating and harassing [Ms. Cuk]." (Conway Decl. at 6.) Because the motion alleged wilful wrongdoing by Burch Coulsten, not negligence, the sanctions motion was not a "Claim." *See Paul K. Rooney, P.C. v. Chicago Ins. Co.,* No. 00 CIV. 2335 (JGK), 2001 WL 262703, *6 (S.D.N.Y. Mar. 16, 2001) *aff'd sub nom*. 26 F. App'x 53 (2d Cir. 2001) (sanctions not covered under professional liability policy where "[t]he sanctions order did not allege that Rooney acted negligently but found that he acted in bad faith by pursuing a non-colorable claim"). Consequently, coverage for Mr. Cuk's request for reimbursement of fees and sanctions is not precluded by the prior sanctions motion.

### 3. Application Exclusion

Question 2 on the application asked whether Burch Coulsten was aware "of any fact, circumstance, situation, act, error or omission which may result in claim being made against the Applicant." (App. at 6.) The application further provides that "[i]t is agreed that any claim or lawsuit against the Applicant or any other proposed Insured arising from any fact, circumstance, situation, act, error or omission disclosed or required to be disclosed in response to question 2 . . . is hereby expressly excluded from coverage under the proposed insurance policy." (*Id.*) The policy incorporates the application. (Policy at

14.) ProCentury contends that the judgment is excluded from coverage because the malpractice action arose from facts Burch Coulsten was required, but failed, to disclose in response to question 2. (*See* Pltf's Mem. at 13-15.) ProCentury argues that an objective test applies to the determination of whether Burch Coulsten was required to disclose the facts surrounding the nullity claim and sanctions motion. (*Id.* at 14.) Specifically, ProCentury asserts that "if the insured [wa]s aware of facts or circumstances that a *reasonable* insured would view as potentially resulting in a claim being made, the exclusion applies to such facts and circumstances." (*Id.*) Even assuming the standard is objective, a genuine dispute exists as to whether the Burch Coulsten attorneys who completed the application were aware of facts a reasonable attorney would view as potentially resulting in a malpractice claim.

The application is dated July 30, 2009. (App. at 7.) While the state court's sanctions order was issued in June 2009, Burch Coulston was no longer representing Mr. Cuk at that time, and there is no evidence showing that any Burch Coulsten attorney was aware of the order when the application was completed. ProCentury argues that Burch Coulsten knew that "the court had repeatedly admonished Burch Coulston that they had failed to produce any evidence that would support a finding of nullity." (Pltf's Mem. at 14.) Mr. Cuk, however, has provided evidence that Burch was not always at trial, and the judge's negative comments were directed at another of Mr. Cuk's attorneys, McNeil, who was not a Burch Coulsten attorney. (Cuk Depo. at 17:15-23, 30:21-23.) Burch Coulsten attorneys were aware at the time of the application that Mr. Cuk had not prevailed in the nullity action and that a sanctions motion had been filed. However, whether a reasonable attorney would believe a malpractice claim was possible after a sanctions motion had been filed would depend on other circumstances known to the attorney, such as the opinions of the judge and the attorney's history with the client. Whether Burch Coulsten attorneys were aware of some of these facts is disputed, and evidence concerning their awareness of others is not before the Court. There is, therefore, a genuine dispute as to whether claims

15

arising from the circumstances surrounding the nullity trial and sanctions motion are excluded from coverage because Burch Coulsten was required, but failed, to disclose such circumstances on the application.

Because there is a genuine dispute as to whether the judgment is covered by the policy, summary judgment is denied as to Mr. Cuk's § 11580 claim.

**B. Breach of Contract and Declaratory Relief**

ProCentury moves for summary judgment on its claim for declaratory relief and on Mr. Cuk's assigned breach of contract claim on the same grounds as discussed above. (Pltf's Mem. at 1, 15.) For the reasons stated above, summary judgment is denied as to these claims.

**C. Breach of the Implied Covenant of Good Faith and Fair Dealing (Bad Faith)**

"There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement. . . . This principle is applicable to policies of insurance." *Comunale v. Traders & Gen. Ins. Co.*, 50 Cal. 2d 654, 658 (1958). A breach of this implied covenant constitutes a tort, and there are two elements to such a breach: "(1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause." *Love v. Fire Ins. Exchange*, 221 Cal. App. 3d 1136, 1151 (1990). Moreover, the "precise nature and extent of the duty imposed by [the] implied promise will depend on the contractual purposes." *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal. 3d 809, 818 (1979). A claim for bad faith under California law "can be dismissed on summary judgment if the defendant can show that there was a genuine dispute as to coverage." *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001).

1  "This genuine dispute . . . rule was originally invoked in cases involving disputes over
2  policy interpretation." *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 723 (2007)
3  (quotation marks omitted). It does not "relieve an insurer from its obligation to thoroughly
4  and fairly investigate, process, and evaluate the insured's claim. A *genuine* dispute exists
5  only where the insurer's position is maintained in good faith and on reasonable grounds."
6  *Id*. Indeed, the adequacy of an insurer's investigation is "[a]mong the most critical factors
7  bearing on the insurer's good faith." *Shade Foods, Inc. v. Innovative Products Sales &
8  Mktg., Inc*., 78 Cal. App. 4th 847, 879 (2000). A breach of the implied covenant "may be
9  found when an insurer fails to consider, or seek to discover, evidence relevant to the issues
10 of liability and damages." *Id.* at 880.

11       Here, ProCentury ultimately denied coverage on the grounds that Burch Coulsten
12 had failed to disclose the sanctions motion and related occurrences in response to question
13 2 on the application. (Denial at 2.) ProCentury argues that an objective test applies to the
14 determination of whether Burch Coulsten was required to disclose the facts surrounding
15 the nullity claim and sanctions motion on the application. (Pltf's Mem. at 14.) Even
16 assuming that is a reasonable interpretation of the policy, ProCentury was still required to
17 undertake a thorough and fair investigation of relevant evidence before denying coverage
18 under that standard.

19       Under ProCentury's objective test, the relevant evidence is the "facts and
20 circumstances" the insured knew of when completing the application. (*Id*.) Mr. Cuk has
21 produced evidence showing that ProCentury never questioned Robert Burch regarding his
22 representation of Mr. Cuk or the information Burch relied upon in completing the
23 application. (Def's Comp. Ex. C at 9-10.) Mr. Cuk has also presented evidence showing
24 that ProCentury never obtained a statement from anyone from Burch Coulsten regarding
25 the sanctions motion. (*Id.* at 10.) A jury could, therefore, reasonably conclude that
26 ProCentury failed to undertake a thorough and fair investigation of the relevant evidence
27 before denying coverage. Summary judgment is denied as to the bad faith claim.
28

17

**D. Unfair Competition**

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. In order to assert a claim under the UCL, a person must have "suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. A private plaintiff is limited to the remedies of injunctive relief and restitution. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003). Here, Mr. Cuk, as assignee of Burch Coulsten, seeks disgorgement of the $31,800 in premiums paid to ProCentury for the policy. (Opp'n at 24.) ProCentury moves for summary judgment on the grounds that the UCL claim is precluded by *Medina v. Safe-Guard Prods.*, 164 Cal. App. 4th 105 (2008) and *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583 (2008). (Pltf's Mem. at 16-19.)[8] Both cases are cited in connection with their discussion of the standing requirements of § 17204. (*Id.* at 18.)

In *Medina*, the plaintiff alleged that he had purchased an insurance contract from a company not licensed to sell insurance. 164 Cal. App. 4th at 108. The court determined that the plaintiff had not alleged any injury because the licensing issue did not render the contract unenforceable. *Id.* at 114. The court specifically noted that the plaintiff did not allege "that he was given unsatisfactory service *or has had a claim denied*." *Id.* (emphasis added). *Peterson* also involved plaintiffs who had purchased insurance from an unlicensed company. 164 Cal. App. 4th at 1586. As in *Medina*, the court concluded that the plaintiffs had not alleged any injury because "they received the benefit of their bargain,

---

[8] ProCentury also moves for summary judgment on the UCL claim on the grounds that, "[a]s shown in [the sections of its brief concerning the other causes of action], ProCentury has properly handled the claim and properly construed the Policy." (Pltf's Mem. at 18.) For the reasons stated above, however, the Court concludes that a genuine dispute exists concerning whether ProCentury has property handled the claim and properly construed the policy.

18

having obtained the bargained for insurance at the bargained for price." *Id.* at 1591. There was no allegation that the plaintiffs were unsatisfied with the insurance. *Id*. at 1592. Here, to the contrary, a reasonably jury could conclude that Mr. Cuk was injured and lost money as a result of ProCentury's refusal to pay the insurance claim. Summary judgment is denied as to the UCL claim.

**E. Punitive Damages**

ProCentury moves for summary judgment on Mr. Cuk's prayer for punitive damages. (Pltf's Mem. at 19-20.) Punitive damages are available "[i]n an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). "'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." Cal. Civ. Code § 3294(c)(2). "'Fraud' means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." Cal. Civ. Code § 3294(c)(3). "'Malice' means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(c)(1).

Mr. Cuk asserts that he is entitled to punitive damages for "plaintiff's continued bad faith refusal to recognize coverage and pay the underlying monetary judgment." (Opp'n at 25.) Bad faith, however, is not in itself sufficient to warrant punitive damages. *See Amadeo v. Principal Mut. Life Ins. Co*., 290 F.3d 1152, 1164 (9th Cir. 2002) ("Punitive damages are available if *in addition* to proving a breach of the implied covenant of good faith and fair dealing proximately causing actual damages, the insured proves by clear and

convincing evidence that the insurance company itself engaged in conduct that is oppressive, fraudulent, or malicious." (quotation marks omitted and emphasis added)); *A-1 Transmission Auto. Tech., Inc. v. AMCO Ins. Co.*, No. CV 10-8496 RSWL SSX, 2012 WL 1534466, *6 (C.D. Cal. Apr. 27, 2012) (denying summary judgment on bad faith claim, but granting summary judgment as to punitive damages). In determining whether there is evidence of malice, fraud, or oppression, a court "must look further—beyond the matter of reasonable response to that of motive and intent." *Neal v. Farmers Ins. Exch.*, 21 Cal. 3d 910, 922 (1978). Here, there is no evidence that would allow a reasonable jury to conclude that ProCentury was not simply unreasonable, but acted with oppression, malice, or fraud. Accordingly, summary judgment is granted as to Mr. Cuk's prayer for punitive damages.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion is GRANTED as to Mr. Cuk's prayer for punitive damages, but is otherwise DENIED.

DATED: April 29, 2014

_____
JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE

*JOSEPHINE L. STATON*